# BARRY, etc., et al. v. FLETCHER, etc., et al.

## Case No. 85-18432 (01)

Eleventh Judicial Circuit, Dade County

June 7, 1985

### APPEARANCES OF COUNSEL

**Lee Kraftchick** for plaintiff.

**Linda J. Ehrlich** for defendant.

### OPINION OF THE COURT

HERBERT M. KLEIN, Circuit Judge.

This matter came before the Court upon Plaintiffs' Complaint pursuant to Chapter 119, Florida Statutes, seeking access to allegedly public documents and requesting an accelerated hearing. The Defendants have filed an answer to the Complaint denying that they have denied access to any public documents and asserting that the documents which have been withheld are exempt from disclosure pursuant

to Fla. Stat. Section 119.07(3)(0) (1984 Supp.). After considering evidence and argument presented at hearings conducted on May 8 and May 13, 1985, the Court concluded that Plaintiffs failed to show at this time that any public documents have been wrongfully withheld. The following Order explains the basis for the Court's ruling.

## FACTS:

Plaintiff, Transport Workers Union, Local 291, and Dade County are currently engaged in preparation for an arbitration set for hearing on May 23 and 24, 1985. In anticipation of the pending arbitration, the County Attorney's office directed employees of the County to begin preparing a series of charts, graphs, memoranda and diagrams to aid that office in understanding the issues raised by the arbitration. None of the documents are kept in the ordinary course of business and were created only because the County Attorney's office felt that they might be helpful for the upcoming arbitration.

The Union is also preparing for the arbitration and has employed two economists, the Plaintiffs, Marshall Barry and Lawrence Jessup, to assist them. Approximately two weeks before filing this Complaint, Barry and Jessup began making demands upon the County for certain documents they consider to be public. Barry and Jessup first began demanding documents from employees at the Metropolitan Dade County Transportation Administration (MDTA) then from employees of the Dade County Budget office, and finally from the Dade County Attorney's office. The Plaintiffs received some of the information they requested but complained that some documents were being unreasonably withheld. The County admitted that it was withholding some documents which it considered to be work product but denied that it was withholding any other documents.

At the hearings on this matter, Rachel Shrauner, the Deputy Director of Metrobus Operations, and Robin Davidson, the Assistant Deputy Director of Metrobus Operations, testified that they disclosed all of the documents in their possession except for a limited number of documents created specifically at the direction of the County Attorney's office. As to any documents requested that were not in their possession, Ms. Shrauner and Ms. Davidson testified that they directed the Plaintiffs to the offices where the documents might be located.

The documents which were withheld, based upon a claim of work product exemption, were submitted to the Court for in camera inspection. A review of these documents reveals that they are compilations of raw data which has already been made available to the Plaintiffs. The documents apparently were prepared in a way that the attorneys want

them prepared for the upcoming arbitration. The documents were not prepared in the ordinary course of business but instead appear to be nothing more than what any lawyer might prepare in anticipation of litigation.

## DISCUSSION:

The issue presented by this case is whether documents created at the direction of the Dade County Attorney's office for an anticipated arbitration must be revealed under the State's Public Records Law. Prior to October 1984, the answer to this question would have been yes. In *Miami Herald v. City of North Miami*, 452 So.2d 572 (Fla. 3rd DCA 1984), the Third District Court of Appeals held that attorney client communications are not exempt from the Public Records Act. The Court noted, however, that the lack of such an exemption places public agencies at a disadvantage when compared to private persons involved in litigation. The Court voiced concern about the wisdom of such a police, but stated if there is to be a lawyer-client privilege exemption from the Public Records Act, the legislature would have to enact an exemption. 452 So.2d at 574.

After the Third District Court of Appeals' decision, the legislature enacted such an exemption. On June 20, 1984, the Governor approved Chapter 84-298 of the Florida Session Laws which provides an exemption to the Public Records Act for:

A public record which was prepared by an agency attorney (including an attorney employed or retained by the agency or employed or retained by another public officer or agency to protect or represent the interest of the agency having custody of the record) or prepared at the attorney's express direction, which reflects a mental impression, conclusion, litigation strategy or legal theory of the attorney or the agency, and which was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings or which was prepared in anticipation of imminent civil or criminal litigation or imminent adversarial administrative proceedings. . . ."

The apparent purpose of this law is to provide a work product exemption from the Public Records Act for attorneys representing public entities. Several aspects of the exemption are particularly relevant to this case. First, the exemption applies not only to documents prepared by agency attorneys but also to documents prepared by non-attorneys at an attorney's express direction. The exemption also is not restricted to the legal theories and litigation strategies of the attorney; it also exempts from disclosure mental impressions and conclusions of

85

the public agency itself. Finally, the exemption is not limited to civil proceedings but also includes adversarial administrative proceedings.

The "work product" exemption to the Public Records Law requires compliance with three criteria: (1) the record must be prepared by the public agency's attorney or at the express direction of the public agency's attorney; (2) the record must be prepared in anticipation of pending litigation or an adversarial administrative proceeding; and (3) the record must reflect "the mental impression, conclusion, litigation strategy, or legal theory of the attorney or the agency." The first two criteria are not seriously disputed in this case; the disputed documents were clearly prepared at the express direction of the County Attorney's office in anticipation of a pending arbitration.

The records at issue in this case also meet the third criteria for exemption because they reflect mental impressions and conclusions of both the County Attorney's office and the MDTA. Since the statutory language is similar to language that has been used to define work product under the Rules of Civil Procedure, I find it appropriate to consider the case law defining work product under the Rules of Civil Procedure. The work product exception was first recognized in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947). The Supreme Court explained the rationale for the work product doctrine as follows:

In performing his various duties . . ., it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. This is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their client's interest. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

86

*Id.* at 510, 67 S.Ct. at 393.

The Florida Supreme Court has adopted the rationale of *Hickman* in its entirety. *See, e.g., Surf Drugs Inc. v. Vermette*, 236 So.2d 108 (Fla. 1970); *Atlantic Coastline Rail Co. v. Allen*, 40 So.2d 115 (Fla. 1949). Although it is not possible to give a precise definition of what constitutes work product, the Florida Supreme Court has stated on numerous occasions that diagrams and charts prepared by an attorney, or at his direction, for reference at trial fall within the general category of work product. *Surf Drugs, Inc.*, 236 So.2d 108 at 112; *Dodson v. Persell*, 390 So.2d 704, 707 (Fla. 1980).[1] Similarly, "communications, reports, memoranda, etc., prepared in anticipation of litigation and passing between a client and his attorney . . . are work products." *Alachua General Hospital v. Simmer USA Inc.*, 403 So.2d 1087. 1088 (Fla. 1st DCA 1981).

The documents Defendants have declined to disclose in this case fall within this definition of work product. The diagrams and charts I have reviewed in camera were prepared by MDTA at the County Attorney's express direction to assist the County Attorney's office in preparing for the upcoming arbitration. The documents appear to be drafts which may or may not be used at trial. The manner in which the documents were composed reflects the mental impressions of the County Attorney's office and MDTA of what the raw data reflected in the documents implies about the issues raised by the arbitration. It should be noted that the raw data upon which these charts are based is available to the Plaintiffs. Thus, the Plaintiffs have the same opportunity to take that raw data and compile whatever charts and diagrams they may wish to use for the upcoming arbitration. The work product exemption does not prevent them from gathering information, it simply prevents them from using the County Attorney's work product in preparing the Union's case.

## CONCLUSION:

Based on the foregoing, I find that the Defendants did not improperly withhold any documents requested by the Plaintiffs. The Defen-

---

[1] Such documents are discoverable once the attorney decides to use them as evidence at trial. *See, e.g., American Motors Corp. v. Ellis*, 403 So.2d 459 (Fla. 1st DCA 1980) (although a document is protected by the work product privilege prior to trial, once it is used at trial, the work product immunity terminates). This case, of course, does not concern any document that is intended for use at trial. All of the documents at issue are in draft stages and may or may not be used as evidence in the upcoming arbitration. Should the Defendants introduce the documents at the arbitration, copies must be made available to the Plaintiffs.

■■■■■■■■■■■■■

dants are reminded, however, to cooperate with the Plaintiffs in providing and locating requested documents. I further find that the documents submitted for in camera inspection were prepared at the direction of the County Attorney's office and are work product within the meaning of Fla. Stat. Section 119.07(3)(0) (Supp. 1984). Accordingly, it is hereby

ORDERED AND ADJUDGED that:

1. The documents submitted to me in camera shall be sealed until further order of the Court.

2. The Court reserves jurisdiction for determination, after taking further testimony, as to whether attorney's fees and costs are appropriate to either party and whether any documents not within the Plaintiffs' knowledge at the time of the hearing were wrongfully withheld.